55 CCPA

## Application of George B. MYRTETUS and Charles H. Pancoast.

### Patent Appeal No. 7946.

United States Court of Customs and Patent Appeals.

April 25, 1968.

———◆———

Richard K. Stevens, Washington, D. C. (O. G. Hayes, James F. Powers, New York City, Stevens, Davis, Miller & Mosher, Washington, D. C., of counsel), for appellants.

Joseph Schimmel, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for Commissioner of Patents.

Before RICH, Acting Chief Judge, SMITH and ALMOND, Judges, and KIRKPATRICK, Judge.[*]

RICH, Acting Chief Judge.

This appeal is from the decision of the Patent Office Board of Appeals,[1] affirming the rejection of claims 62–65 in appellants' application serial No. 276,702, filed April 30, 1963, entitled "Automotive Vehicle Servicing." No claim has been allowed.

The invention is a method of finding deficiencies in automobiles. The autos are driven one after another to a series of stations at each of which they are stopped and tested. The tests require sophisticated and expensive equipment, e. g., dynamometers, the use of which, however, is concededly old.

Claim 62 is illustrative:

62. A method of diagnosing a line of automotive road vehicles for deficient conditions and operating characteristics thereof, which comprises rolling a continuing line of such vehicles one after another in normal manner along a vehicle transit path progressively to and then beyond each of a plurality of sequentially positioned diagnostic stations, performing substantially the same diagnostic test on each vehicle in said line at each of the respective diagnostic stations sequentially as each vehicle reaches each station, said diagnostic tests on each vehicle in said line comprising a different test at each said station, effecting sequentially on each said vehicle in said line at least one of said respective diagnostic stations transfer of energy between a rotating wheel of each vehicle and diagnostic equipment external thereto, initiating a diagnostic test on a vehicle in said line at one station and, before completion thereof, initiating a different diagnostic test on at least one preceding vehicle in said line which has theretofore been tested at said one station thereby accumulating combined data on said preceding vehicle, continuing to initiate tests on successive vehicles in said line at respective stations thereby accumulating further combined data on each vehicle as it progresses to and beyond said respective stations, performing on all

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Consisting of Dracopoulos and Bailey, Examiners-in-Chief, and Reynolds, Acting Examiner-in-Chief, opinion by Reynolds.

of said vehicles in said line substantially only diagnostic tests and related operations necessary thereto, and discharging said vehicles successively from said line, each diagnosed to substantially the same and overall extent sufficient to provide a master record of the deficient conditions and operating characteristics which need correction and thereby enabling correction thereof subsequent to the diagnosis.

The following references were relied upon:

S. Iker, Production Line Service, Motor Service,
Dec. 1959, at 42, 43, 92, 94 and 98.
J. Poling, New Clinic Gives Cars Family-Doctor Care,
Popular Science, May 1950, at 142–143.

———◆———

Iker describes an "assembly line" method of automotive maintenance in which the component steps of a thorough inspection, complete tune-up, and major lubrication are performed at seven successive stations. The automobiles are rolled to stations 1, 2, and 7. They are otherwise transported from station to station on chain-driven dollies. The work done is not complex, only that demanded by the lubrication and tune-up.

Poling describes the use of sophisticated test equipment, e. g., dynamometers, engine analyzers, etc., in the inspection of automobiles. The equipment is moved to the automobiles which remain stationary.

The examiner deemed it obvious to use "any of the conventional well-known diagnostic tests taught by Poling in the assembly line type servicing method of Iker." The board agreed. We agree.

Appellants argue that the automobiles in Iker are moved from station to station on dollies. The point is valid, as a matter of fact, only for the movement from the second to the sixth stations. We think, however, as the examiner did, that the "conventional method of rolling or driving a test automobile from place to place within the automotive garage is certainly a more common and obvious method of moving the vehicle than is the chain driven dolly system shown by Iker." We do not think unobviousness can be predicated on the elimination of the dollies.

The Poling reference shows test equipment such as used in appellants' method to be old. Appellants do not argue to the contrary. They urge that the combination of references is "improper" since the Poling method is built upon the principle: "Don't move the car. Bring the equipment to it." We are unpersuaded. We think it was perfectly clear at the time of appellants' invention that the disclosed test equipment could be used regardless of whether the automobiles were moved to it or vice-versa.[2]

Appellants have presented evidence of commercial success. We do not think that such evidence can overcome the conclusion of obviousness compelled by the references in this case.

The decision of the board is affirmed.

Affirmed.

2. The examiner and board also relied upon the typical state inspection station to show the obviousness of appellants' method.